# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FAITH MARIE ANAYA ROSALES, | No. 2:16-CV-0761-CMK |
| Plaintiff, | |
| vs. | MEMORANDUM OPINION AND ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff, who is proceeding with retained counsel, brings this action under 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security. Pursuant to the written consent of all parties, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the court are plaintiff's motion for summary judgment (Doc. 17) and defendant's cross-motion for summary judgment (Doc. 26).

///
///
///

## I. PROCEDURAL HISTORY

Plaintiff applied for social security benefits on November 6, 2013. In the application, plaintiff claims that disability began on November 9, 2012. Plaintiff's claim was initially denied. Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on October 30, 2015, before Administrative Law Judge ("ALJ") Christopher C. Knowdell. In a November 17, 2015, decision, the ALJ concluded that plaintiff is not disabled based on the following relevant findings:

1. The claimant has the following severe impairment(s): bilateral shoulder osteoarthritis, bilateral shoulder tendinitis, partial tear of the right shoulder, impingement of the bilateral shoulders, status post repair, degenerative joint disease of the bilateral knees, migraines, degenerative disc disease of the cervical spine, obesity, major depressive disorder, and generalized anxiety disorder;

2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3. The claimant has the following residual functional capacity: the claimant can perform light work; she can stand and/or walk up to 4 hours; can occasionally climb, balance, kneel, stoop, crouch, and/or crawl; cannot climb ladders, ropes, or scaffolds; can occasionally reach overhead; is limited to superficial interactions with coworkers and the public; is capable of simple and routine tasks; and likely to be absent from work one time a month due to headaches; and

4. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

After the Appeals Council declined review on February 10, 2016, this appeal followed.

## II. STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521

(9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

### III. DISCUSSION

In her motion for summary judgment, plaintiff argues: (1) the ALJ failed to properly assess the medical opinions; and (2) the ALJ failed to provide sufficient reasons for finding her testimony not credible.

**A.  Evaluation of Medical Opinions**

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional. See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). The least weight is given

to the opinion of a non-examining professional. See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record. See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence. See Lester, 81 F.3d at 830. This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding. See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989). Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional. See Lester, 81 F.3d at 830-31. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. See id. at 831. In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings. See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

/ / /
/ / /
/ / /
/ / /

4

Plaintiff challenges the ALJ's evaluation of the opinions of Drs. Deitchman, King, Nichol, Broderick, and Romer.

### 1. Dr. Deitchman

As to Dr. Deitchman, the ALJ stated:

> Treating physician, K. Deitchman, M.D., opined that the claimant could lift and/or push over five pounds, could perform limited repetitive bending, twisting, and/or reaching, could not work above shoulder height, had limited ability to operate hazardous machinery and/or vehicles, had limited use of her knees and shoulders, must alternate sitting and standing (ex. 10F/42). Dr. Deitchman further opined that the claimant had limited ability to perform prolonged walking, could sit, stand, and/or walk for up to three hours in an eight-hour day and could perform simple grasping and fine manipulations with the bilateral upper extremities (Ex. 10F/46-56). Generally, 20 C.F.R. 404.1527(d) and 416.927(d) indicate that treating source opinions are to be afforded controlling weight. However, these regulations also state that in some instances, such opinions may be given little weight if not well supported.
>
> In this case, Dr. Deitchman's opinion was based solely upon temporary restrictions and thus is not consistent with the medical record as a whole. Thus, Dr. Deitchman's opinion is given little weight.

The court finds no error. A review of Dr. Deitchman's records reflect that he consistently opined that plaintiff's condition was not permanent and stationary, meaning that plaintiff's condition had not yet reached maximum medical improvement. Dr. Deitchman also consistently indicated that he did not expect permanent restrictions or permanent disability. Additionally, the doctor's opinion that plaintiff was temporarily unable to perform her usual job is irrelevant in the social security context which is concerned with plaintiff's ability to perform any gainful work that exists in the national economy. See 20 C.F.R. § 404.1505(a).

### 2. Dr. King

As to Dr. King, the ALJ stated:

> Treating physician, Mark King, M.D., opined that the claimant was one hundred percent disabled (Ex. 12F/20). Dr. King further opined that the claimant could lift up to ten pounds, could sit, stand, and/or walk up to two hours in an eight-hour day, and must lie down every two to three hours and elevate her legs (Ex. 15F). Dr. King's opinion is unpersuasive because it appears to rely quite heavily on the claimant's subjective complaints of pain. Thus, Dr. King's opinion is given little weight.

5

1   Plaintiff argues that the ALJ's conclusion that Dr. King's opinion is minimally supported by
2   objective evidence is belied by the record. Specifically, plaintiff states: "He [Dr. King] reviewed
3   records from Plaintiff's prior treatment for her work-related injuries, reviewed imaging reports as
4   they became available, and his own examinations repeatedly showed a number of significant
5   positive findings, such as nerve impingement and reduced strength in Plaintiff's shoulders, laxity
6   in her knees, and positive Spurlings' maneuvers that indicated cervical nerve root compression."
7   Plaintiff also notes that Dr. King reviewed MRI studies which showed a complex meniscal tear.
8   Finally, plaintiff states that Dr. King's opinion is based on a physical therapist's examination that
9   revealed significantly reduced muscle strength, reduced mobility, and significant stiffness in both
10  knees.

           The limitations outlined by the ALJ are set forth in Dr. King's October 29, 2015,
assessment, entitled "Questionnaire." In that assessment, Dr. King references the following
objective findings: "MRI, consults, exams." While the ALJ may reject medical reports that do
not contain any explanation for the bases of their conclusions, see Molina v Astrue, 674 F.3d
1104, 1111-12 (9th Cir. 2012), such is not the case here because Dr. King provided an
explanation for his results, specifically objective findings from MRI studies, consultation with
other specialists like a physical therapist, as well as the doctor's own examinations of plaintiff.

           The court finds that the ALJ erred by citing a lack of objective evidence and by
failing to discuss the objective evidence of record with respect to Dr. King's October 29, 2015,
assessment. The court declines defendant's invitation to weigh the objective evidence in the first
instance as that function is reserved to the agency.

           3.      Dr. Nichol

           As to Dr. Nichol, the ALJ stated:

           Treating physician, James Nichol, M.D., opined that the claimant's
           headaches would interfere with her ability to work approximately one day
           per week (Ex. 3F). Dr. Nichol's opinion is unpersuasive because it is
           inconsistent with the medical records. For example, medical records show
           that the claimant reported that she experienced headaches once per week

| | |
|---|---|
| 1 | and subsequent treatment notes characterized her headaches as stable (Ex. 5F). Thus, Dr. Nichol's opinion is given little weight. |
| 2 | |

As plaintiff observes, the evidence cited by the ALJ does not support the ALJ's conclusion that Dr. Nichol's opinion is inconsistent with the medical records. Contrary to the ALJ's conclusion, the evidence cited by the ALJ – that plaintiff had headaches once per week and that her headaches were "stable" – is consistent with Dr. Nichol's opinion that headaches would interfere with plaintiff's ability to work once per week. As to records showing plaintiff's headaches were "stable," among those records are progress notes documenting a stabilizing of the frequency of plaintiff's headaches. While other records indicate that plaintiff reported on October 30, 2013 – the last treatment record before Dr. Nichol's December 10, 2013, assessment – that she only had one migraine in the past month and that her headaches had improved, possibly due to psychological counseling, it is not for this court to assess the medical evidence for purposes of assigning weight to a particular medical opinion.

        4.     <u>Dr. Broderick</u>

As to Dr. Broderick, the ALJ stated:

> Examining physician, David Broderick, M.D., opined that the claimant would have restrictions concerning repetitive squatting and kneeling as well as shoulder height and overhead lifting. Dr. Broderick further opined that the claimant would be able to perform most clerical activities and could perform a clerical type job (Ex. 9F). Dr. Broderick's opinion is persuasive because he reviewed the entire medical record and it is consistent with his examination findings. In fact, in comparing Dr. Broderick's opinion with all the other physicians in this matter, his report provides the most thorough review of all the record, and the most thorough physical examination findings. Thus, Dr. Broderick's opinion is given significant weight.

Plaintiff argues that the ALJ's analysis is not supported by the record which shows that Dr. Broderick did not review "the reports of Plaintiff's knee surgeries (Tr. 472) nor did he review any of Dr. King's records that showed, among other things, that Plaintiff's knees continued to buckle and required an orthopedic consult (Tr. 563-621, 707-09)."

/ / /

Given the errors identified above with respect to Drs. King and Nichol, on remand the ALJ should re-evaluate Dr. Broderick's opinion in light of evidence of record regarding plaintiff's knees.

5. Dr. Romer

Plaintiff argues that the ALJ erred by failing to discuss the opinion of her treating psychiatrist, Dr. Romer, who opined that plaintiff was disabled. Plaintiff's argument is without merit because a doctor's opinion on the ultimate issue of disability need not be considered. See 20 C.F.R. § 404.1527(d)(1).

**B.  Credibility Assessment**

The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). An explicit credibility finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony. See id. Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing." See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc). As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the

> medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the <u>Cotton</u> test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in <u>Cotton v. Bowen</u>, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. <u>See</u> <u>Bunnell</u>, 947 F.2d at 345-47. In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms. <u>See</u> <u>Smolen</u>, 80 F.3d at 1284 (citations omitted). It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use. <u>See</u> <u>Thomas v. Barnhart</u>, 278 F.3d 947, 958-59 (9th Cir. 2002). If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made. <u>See</u> <u>Carmickle</u>, 533 F.3d at 1161 (citing <u>Swenson v. Sullivan</u>, 876 F.2d 683, 687 (9th Cir. 1989)).

Regarding reliance on a claimant's daily activities to find testimony of disabling pain not credible, the Social Security Act does not require that disability claimants be utterly incapacitated. <u>See</u> <u>Fair v. Bowen</u>, 885 F.2d 597, 602 (9th Cir. 1989). The Ninth Circuit has repeatedly held that the ". . . mere fact that a plaintiff has carried out certain daily activities . . . does not . . .[necessarily] detract from her credibility as to her overall disability." <u>See</u> <u>Orn v. Astrue</u>, 495 F.3d 625, 639 (9th Cir. 2007) (quoting <u>Vertigan v. Heller</u>, 260 F.3d 1044, 1050 (9th Cir. 2001)); <u>see also</u> <u>Howard v. Heckler</u>, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a claim of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic restricted travel); <u>Gallant v. Heckler</u>, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the

claimant was entitled to benefits based on constant leg and back pain despite the claimant's ability to cook meals and wash dishes); Fair, 885 F.2d at 603 (observing that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication"). Daily activities must be such that they show that the claimant is ". . .able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." Fair, 885 F.2d at 603. The ALJ must make specific findings in this regard before relying on daily activities to find a claimant's pain testimony not credible. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

As to plaintiff's credibility, the ALJ stated:

> The claimant's allegations of severe knee impairment are not credible, to the extent alleged. For example, medical records revealed that the claimant could walk in heels without a limp, sensation was intact on the dorsal plantar aspects of the toes and her motor strength was normal (Ex. 4F/4). Subsequent physical examination revealed negative Lachman's sign, pivotal shift sign and MacMurry's sign bilaterally. Physician's notes also revealed that there was no erythema of either knee, the claimant exhibited full extension to 100 degrees bilaterally and normal sensation to pinprick in the bilateral lower extremities (Ex. 9F/10).
>
> The claimant did undergo surgery for the alleged impairments, which certainly suggests that the symptoms were genuine. While the fact would normally weight in the claimant's favor, it is offset by the fact that the record reflects that the surgery was generally successful in relieving the symptoms. For example, physician's notes following her right knee surgery revealed no swelling or effusion, no evidence of infection and 0-110 degree of flexion with no varus or valgus stress instability (Ex. 11F/2).
>
> The claimant's allegations of severe psychological impairment are not supported by the . . . medical evidence. For example, mental status examination notes revealed normal behavior, speech, thought processes, thought content, mood, affect, and judgment (Ex. 8F/8). Additional medical records revealed that the claimant had experienced an improvement in psychological symptoms with medication (Ex. 8F/10). Subsequent medical records revealed that the claimant was oriented to all spheres and demonstrated an appropriate mood and affect (Ex. 12F/45). Recent mental health notes revealed that the clamant refused psychotropic medication (Ex. 13F/2).

///

The claimant has been prescribed and has taken appropriate medications for the alleged impairments, which weighs in the claimant's favor, but the medical records reveal that the medications have been relatively effective in controlling the claimant's symptoms. Specifically, treating physician, Mark King, M.D., noted that the claimant continued to experience substantial pain relief from medication (Ex. 12F/17).

Although the claimant has received various forms of treatment for the allegedly disabling symptoms, which would normally weigh somewhat in the claimant's favor, the record also reveals that the treatment has been generally successful in controlling those symptoms. For example, treatment notes indicate that the claimant's migraines had improved with psychological counseling (Ex. 5F/6).

The record reveals that the claimant failed to follow up on recommendations made by the treating doctor, which suggests that the symptoms may not have been as serious as has been alleged in connection with this application and appeal. For example, treatment notes indicate that the claimant was advised to wear flat shoes but admitted that she continued to wear two-inch heels (Ex. 4F/3).

Finally, although the claimant has described daily activities which are fairly limited, two factors weigh against considering these allegations to be strong evidence in favor of finding the claimant disabled. First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty. Secondly, even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision. Overall, the claimant's reported limited daily activities are considered to be outweighed by the other factors discussed in this decision. Thus, the claimant's allegations . . . are not credible.

For the reasons discussed above, the court finds that a remand is appropriate to re-evaluate the medical opinion evidence, specifically the opinions of Drs. King, Nichol, and Broderick. This will necessitate a re-evaluation of plaintiff's testimony currently of record, as well as any new testimony which may be provided at any subsequent administrative hearing, in light of the weight ultimately given the various medical opinions.

/ / /

/ / /

/ / /

/ / /

## IV.  CONCLUSION

For the foregoing reasons, this matter will be remanded under sentence four of 42 U.S.C. § 405(g) for further development of the record and/or further findings addressing the deficiencies noted above.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Doc. 17) is granted;
2. Defendant's cross motion for summary judgment (Doc. 26) is denied;
3. This matter is remanded for further proceedings consistent with this order; and
4. The Clerk of the Court is directed to enter judgment and close this file.

DATED: September 19, 2017

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE